UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ELOY ALONZO, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos.: 3:21-CV-155-TAV-JEM |
| | ) | 3:16-CR-134-TAV-JEM |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner filed a Pro Se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. 1].[1] This case has been referred [Doc. 12] by the District Judge to the undersigned for a report and recommendation regarding disposition of Petitioner's sole remaining claim that his trial counsel misinformed him as to his maximum sentencing exposure. The parties appeared before the undersigned for an evidentiary hearing. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Government. Attorney Mark E. Brown appeared on behalf of Petitioner, who was also present. For the reasons set forth herein, the Court **RECOMMENDS** that the District Judge **DENY** Petitioner's § 2255 motion.

**I.    BACKGROUND**

The following sets forth relevant background information as stated by the District Judge:

> In or around 2014, petitioner owned three trailers at 324, 410, and 414 Mashburn Road and a barn in close proximity, and petitioner used these premises to sell methamphetamine [Doc. 110 pp. 10–14; Doc. 111 pp. 106, 139, 148, 215–16, 236–37]. After significant investigation, officers obtained a warrant to search the barn for evidence related to petitioner's suspected offenses [Doc. 111 pp.

---

[1] Unless otherwise indicated, all citations to the record are found on the docket of Case No. 3:21-CV-155-TAV-JEM.

138–39]. At the same time, law enforcement noted petitioner leaving the area and ultimately arrested him for providing false identification [*Id.* at 139–42].

Meanwhile, other officers obtained consent from petitioner's girlfriend Jamie Paul ("Paul") to search the trailer at 324 Mashburn Road [*Id.* at 166]. Paul represented that she owned and lived at the premises, and she and her children lived at the residence for two weeks [*Id.* at 216, 237, 257]. Officers entered the home and eventually searched a master bathroom, where the officers discovered contraband including methamphetamine and firearms [Doc. 110 pp. 51–53]. Officers also searched 410 Mashburn Road, where Paul indicated petitioner previously lived [Doc. 111 pp. 238–41].

Petitioner proceeded to trial, and officers and Paul testified [*See generally* Docs. 110, 111]. The jury convicted petitioner as to three counts of the indictment: (1) conspiracy to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A); (2) possession with intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (3) possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c) [Doc. 89; Doc. 125 p. 1]. Based on these convictions, the Court sentenced petitioner to an aggregate term of imprisonment of 322 months, that is, 26 years and 10 months [Doc. 125 p. 2]. Petitioner appealed his convictions and sentence, and the Sixth Circuit affirmed [*See generally* Doc. 134].

[Doc. 12 pp. 1–3 (footnote omitted) (citations to Case No. 3:16-CR-134-TAV-JEM)].

In his § 2255 motion, Petitioner alleges ineffectiveness of counsel on three grounds [Doc. 1]. First, Petitioner alleges counsel was ineffective for not challenging the searches of 324 and 410 Mashburn Road [Doc. 4 pp. 4–6, 8–9]. Second, Petitioner challenges appellate counsel's alleged failure to communicate with him [*Id.* at 6–8]. Third, Petitioner argues his trial counsel incorrectly informed him of the maximum sentencing exposure for his offenses and that this misinformation caused him to forego pursuing a plea and instead proceed to trial [*Id.* at 3–4, 9; Doc. 3 p. 1]. The District Judge entered an order denying Petitioner's ineffective assistance of counsel claim as to the first two grounds [Doc. 12 p. 14]. Thus, Petitioner's only remaining claim

2

is for ineffective assistance of counsel based on the assertion that trial counsel misinformed Petitioner as to his maximum sentencing exposure.

The District Judge referred this matter to the undersigned to conduct an evidentiary hearing to determine whether counsel misinformed Petitioner as to his maximum sentencing exposure, and if so, whether such justifies granting Petitioner's request for § 2255 relief, and to include a recommendation regarding a certificate of appealability [Doc. 12 pp. 13–14]. Subsequently, the Court appointed Attorney Mark E. Brown to represent Petitioner in the evidentiary hearing [Doc. 13]. The undersigned held an evidentiary hearing on April 5, 2022, and following that hearing, the parties filed post-hearing briefs [Docs. 19, 22].

## II. SUMMARY OF THE TESTIMONY

The Government called Attorney Jim Varner to the stand [Tr. 6].[2] Attorney Varner was appointed to represent Petitioner in his federal criminal case [Case No. 3:16-CR-134-TAV-JEM, Doc. 27]. Attorney Varner testified he had reviewed Petitioner's § 2255 motion and associated affidavit [Docs. 1 & 3] prior to the April 5 evidentiary hearing [Tr. 27–28].

Attorney Varner is a lawyer with over forty (40) years of practice experience [*Id.* at 7]. During that time, Attorney Varner has practiced in the field of criminal defense almost exclusively [*Id.*]. He has handled a significant number of federal criminal cases, averaging about five (5) per year [*Id.*]. Attorney Varner was a member of the CJA Panel at the time of its inception in the early 1990s, and he has consistently fulfilled the requirements to retain membership on that panel, including being appointed to represent defendants in federal criminal cases multiple times over the years [*Id.* at 8].

---

[2] All references to the "Transcript" refer to Case No. 3:21-CV-155, Doc. 17, unless otherwise stated.

Attorney Varner stated he is about "[a]s familiar as anybody can be" with the Federal Sentencing Guidelines [*Id.*]. Attorney Varner related that, during his representation of Petitioner, he advised him his potential sentencing exposure if he proceeded to trial:

> I advised [Petitioner] to the extent that I was capable of doing. Like I said . . . I am [familiar] with the Sentencing Guidelines, but the fact is that my common practice has always been to tell my clients that this is the guideline range that I anticipate that they would be facing assuming that I have all of the information and I haven't missed something because there's always that possibility because, for example, speaking specifically about this case, I don't believe that I discussed with [Petitioner] the fact that he would be facing a two-level enhancement for maintaining a drug house because that was not commonly addressed prior to—or at least not in my experience was not commonly assessed prior to my case with [Petitioner]. So I don't believe I discussed that with [Petitioner].

[*Id.* at 9].

Attorney Varner explained that his normal practice for advising clients on the Sentencing Guidelines has been to do an initial analysis of the Government's proof, look at the proof in relation to the Sentencing Guidelines, and explain to his clients what they will be facing or what they are potentially facing in that regard unless there are additional adjustments that could be made either up or down [*Id.* at 9–10]. Attorney Varner generally tells his clients what his personal experience has been with any particular sentencing judge, and he informs his clients that the judge will receive a report with a Guidelines range and that the judge can sentence anywhere within that range [*Id.* at 10]. Attorney Varner typically tells his clients that they will usually face the bottom end of the Guidelines range if they proceed with a plea, but if they do not, then the judge has discretion to sentence a defendant anywhere within the Guidelines range [*Id.*]. Attorney Varner testified that he qualifies his opinion regarding his initial analysis of the Guidelines by stating he cannot say exactly what the Guidelines range will be—he can only state what he believes it will be—because he is not the Probation Officer and is not making the sentencing report for the judge [*Id.* at 10–11].

4

The Government asked Attorney Varner if he has specifically said things in the past like, "I might have missed something, this is just an estimate[,]" or anything to that effect [*Id.* at 11]. Attorney Varner responded:

> Not, not that I might have missed something; if there was something that I was not aware of. I mean . . . I've had instances over the years frequently where my client's criminal record was not accurate . . . going into the beginning of the case and we found out about additional criminal history, which affected Sentencing Guidelines later on.

[*Id.*]. Attorney Varner stated he tries to make it clear to his clients that he is providing only an estimate, and that the final Guidelines range may be higher or lower than that estimate [*Id.*].

Attorney Varner related that, in Petitioner's case, he advised Petitioner of what conversations he had with the Government prior to the beginning of Petitioner's trial, including specifically what the Government would offer in return for a plea [*Id.* at 11–12]. He informed Petitioner that, because of the charge, Petitioner was facing a mandatory minimum sentence of ten years, and that because of the drug quantities, that sentence would likely increase [*Id.* at 12]. Attorney Varner stated, while there had initially been a dispute about the drug quantity, the Government found at least two kilograms of almost pure methamphetamine in one of Petitioner's leased houses, and the substantial quantity of drugs did increase the sentence in this case [*Id.*].

The Government asked Attorney Varner if he advised Petitioner as to what his criminal history might be, and he responded:

> Based on his Pre-Sentence Report—and there was some dispute about this. I believe [Petitioner] told me that . . . one of the criminal convictions that was showing up on his record he didn't recall or that he didn't believe was his. But there were either . . . one or more convictions that we were aware of. I anticipated that he would be in Criminal History Category II.

5

[*Id.*]. Attorney Varner stated that Petitioner ultimately ended up in Criminal History Category II [*Id.* at 13].

Petitioner was sentenced under the 2018 Sentencing Guidelines [*Id.*]. Attorney Varner testified he originally calculated that Petitioner would face a sentencing range of 210 to 262 months under the 2018 Sentencing Guidelines because he would be at least a level 36 based on the quantity of drugs and would be a Criminal History Category II [*Id.*]. Attorney Varner related that Petitioner was also facing an additional 60-month mandatory minimum sentence for use of a gun [*Id.*]. Based on those calculations and if Petitioner pled guilty, Attorney Varner also stated that Petitioner would get a three-level acceptance, resulting in a sentence of 188 months plus 60 months [*Id.*]. The Government asked Attorney Varner if he advised Petitioner that his sentence would be 188 months plus 60 months if he pleaded guilty and signed a plea agreement, and he responded:

> We had several discussions about the possible ranges of punishment. And in talking with the possibility of the Plea Agreement, what I do is I tell [my clients] what I believe . . . the Guidelines will be without acceptance of responsibility and what the acceptance of responsibility would put the guideline range at. Again . . . I do typically tell my clients that based on my experience with our . . . Federal Judges, that if they enter a plea of guilty, that they will typically get a sentence at the bottom end of the Guidelines unless I have been told by the U.S. Attorney prosecuting the case that they are going to object to that, which seldom happens. So, yeah, . . . I would have done that calculation. And from looking at the paper here—And understand . . . I'm talking about something that occurred almost four years ago now. But looking at the Sentencing Table and knowing what I know about the drug quantities in [Petitioner's] case, that looks to be the numbers that I would have talked to him about . . . . roughly eighteen years.

[*Id.* at 14–15].

When asked if he advised Petitioner about the strength of the Government's case, Attorney Varner stated there were some questionable witnesses that could potentially be called, and he had opined that, if all the Government's witnesses showed up at trial, Petitioner's chances of being

6

convicted were extremely good, whereas if the Government's witnesses did not show up at trial, Petitioner would have, at best, a fifty/fifty chance [*Id.* at 15].

Attorney Varner stated he informed Petitioner towards the end of his representation that he believed Petitioner had at least a seventy-five percent chance of being convicted, if not more [*Id.* at 16]. Attorney Varner stated he did not get the impression that Petitioner was even interested in a plea agreement during their discussion, apparently because Petitioner believed that, if someone had said Petitioner was involved in the alleged crimes, they would have to be lying [*Id.* at 16–17].

Attorney Varner testified he discusses plea options every time he talks with his clients, as he did with Petitioner [*Id.*]. Attorney Varner explained that he does not tell his clients they should or should not take a plea agreement; instead, he lays out all the options and tells them that they need to make the decision as to whether they should plead guilty [*Id.*]. He noted that he would suggest his client take a plea agreement if a case is so strong that his client will likely face life in prison, and a plea agreement may get them the possibility of release at a reasonable age [*Id.*]. But he stated he would never force any client to do so [*Id.* at 17].

According to Attorney Varner, there was some dispute about the quality and quantity of the drugs and how that would impact Petitioner's sentence [*See generally id.* at 17–19]. He testified that his estimate of a sentence range of 151 to 188 plus 60 months were Petitioner to plead guilty was based on what Attorney Varner had been told by the Government that it expected to be able to prove at trial, and what Attorney Varner expected the proof to show [*Id.* at 17]. In the end, Attorney Varner stated his estimate that Petitioner would be a level 36 given the drug quality and quantity proved to be true [*Id.* at 19].

Attorney Varner testified he could not recall having mentioned to Petitioner that he was potentially facing a sentencing enhancement based on maintaining a drug house [*Id.*]. Attorney

7

Varner believed, however, that he told Petitioner he would not get the three-level acceptance reduction and that he would likely be facing a sentencing range of 210 to 262 plus 60 months if he proceeded to trial [*Id.*]. Attorney Varner related that he speaks to his clients about potential sentence enhancements, such as a leadership enhancement, if they are applicable to his client's case, but he could not recall having discussed a leadership enhancement or any other enhancements with Petitioner [*Id.*].

Attorney Varner was asked if he discussed the judge's discretion at sentencing within the Guideline range with Petitioner, and he responded:

> I did. And I also told him that there was a possibility that . . . as I tell all of my clients, there's a possibility that there could be some information that comes to light during the course of the Pre-Sentence Investigation that I was either not aware of or hadn't considered. And that if I was incorrect, it's possible that his sentence could be higher than . . . what I was suggesting. I say that because . . . in my experience, the enhancements that are—the adjustments that are made to the Sentencing Guidelines are typically not in favor of the defendant and do not result in lowering the Guidelines as a result of an adjustment, but typically result in an enhancement.

[*Id.* at 20–21].

With respect to Petitioner's statement that he wanted to go to trial because there would only be a three years' difference in pleading guilty or not guilty, Attorney Varner could not recall having had any conversations with Petitioner in that regard [*Id.* at 21]. Attorney Varner also could not recall having discussed the fact that there was only a three-year difference in pleading guilty versus not pleading guilty; in fact, Attorney Varner stated that, if that was the only difference in one of his clients' cases, he would probably have had the attitude that the client might as well "take [a] shot and go to trial" [*Id.* at 21].

8

Attorney Varner was asked if he had estimated that proceeding to trial would not be in Petitioner's best interest, and he stated that he believed he did not try to twist Petitioner's arm to try to get him to plead guilty [*Id.*]. Attorney Varner related that he explained the options to Petitioner in detail, discussed the Sentencing Guidelines, and discussed the possibility of the Guidelines range being higher than what he had calculated [*Id.* at 21–22]. Attorney Varner stated that he discussed "the rent of the Courtroom" to Petitioner, as he does with all his clients, which he explained was a common term used among defense attorneys to explain how proceeding to trial may cause a higher sentence than pleading guilty and foregoing a trial [*Id.* at 22].

Attorney Varner testified that—based on the sentencing assumptions he had discussed with the Government and even considering that he may have forgotten to discuss a potential drug house enhancement—he advised Petitioner that he was facing a sentence of 262 months plus 60 months (322 months combined) if he proceeded to trial, which would be a sentence at the top of the Guidelines range [*Id.* at 23]. Attorney Varner did not believe he told Petitioner the worst he could get would be twenty-one years; rather, Attorney Varner stated he typically would never make such a statement to one of his clients because, while he considers himself reasonably knowledgeable of the Sentencing Guidelines, there are too many variables to make such a definitive statement [*Id.*].

Attorney Brown proceeded to cross examine Attorney Varner [*Id.* at 24]. Attorney Varner testified that, at the time of his representation, he always had an interpreter with him when he went to speak with Petitioner at jail because Petitioner spoke limited English [*Id.* at 25]. Attorney Varner was unsure about Petitioner's ability to read English, but he stated he had the interpreter read all documents to Petitioner [*Id.* at 25–26]. Attorney Varner explained that he would not have presented anything to Petitioner in writing during his representation, nor would anything have been presented in writing that had not been first translated into Spanish [*Id.* at 26].

Attorney Varner reiterated that he could not recall having discussed the two-level sentencing enhancement with respect to maintaining a drug house with Petitioner [*Id.*]. Attorney Varner did recall speaking to Petitioner about the nearly two kilograms of pure meth that had been found in a home that was being leased by Petitioner for his girlfriend; although, he could not recall Petitioner having actually lived there, and he related that others did have access to the home [*Id.* at 26–27]. Upon questioning, Attorney Varner confirmed that he never gave Petitioner a copy of the 2018 Sentencing Guidelines [*Id.* at 27].

The Government did not ask any questions on re-examination, and neither party presented any additional evidence or testimony [*Id.* at 28].

## IV. ANALYSIS

Petitioner asserts his trial counsel was constitutionally ineffective because he miscalculated Petitioner's maximum sentencing exposure [Doc. 4 p. 9], and Petitioner claims he would have opted to take a plea agreement had his attorney correctly calculated the maximum sentencing exposure [*Id.*]. Petitioner states his trial counsel advised him that he would try to secure a plea agreement for eighteen years, but in any case, the maximum sentence he could receive if he went to trial would be twenty-one years (252 months) [*Id.* at 3–4].

According to Petitioner, defense counsel has a duty to explain how the Sentencing Guidelines will apply to a defendant and the likely application of enhancements and departures [Doc. 4 p. 9 (citing *United States v. Williams*, 176 F.3d 301, 310 (6th Cir. 1999)]. Petitioner contends that, given the facts of the case, it was likely he could have been subject to a two-level premises sentencing enhancement, but his attorney never presented that possibility to him. Petitioner argues that there was a communication gap in this case as well because he did not read or speak English. Even though an interpreter was present in all his interactions with Attorney

Varner, Petitioner contends that did not completely resolve the communication barrier, exacerbating his misunderstanding of his sentencing exposure.

The Government maintains that Attorney Varner told Petitioner he was only estimating the Guideline range. And, in any case, the Government notes that Attorney Varner presented an estimated Guideline range of 210 to 262 plus 60 months to Petitioner, resulting in a maximum sentencing range of 322 months—the exact sentence Petitioner received. The Government states that no tangible evidence has been presented that Attorney Varner told Petitioner the worst he could get was twenty-one years (252 months). Moreover, the Government argues Attorney Varner testified Petitioner never appeared to be interested in a plea agreement no matter his sentencing exposure, as Petitioner was confident the Government's witnesses would not show up at his trial, and—even if they did—they would not testify against him or would be lying if they did. The Government relates that Petitioner had also lived in the United States for roughly ten to fifteen years, and it was not evident Petitioner's English was as bad as has been implied, a position the Government believed has support from the trial testimony.

### A. Petitioner's Claim that Trial Counsel was Ineffective Because He Misinformed Petitioner About His Maximum Sentencing Exposure

In pertinent part, § 2255(a) of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution." In order to obtain relief for an alleged constitutional error, the record must reflect a constitutional error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). The burden is on the petitioner to prove he is entitled

11

to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

When the alleged constitutional error is ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). That is, the petitioner must: (1) establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); and (2) demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different," *Strickland*, 466 U.S. at 694.[3] Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (providing that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

### 1. Whether Counsel's Performance was Defective

Defendants have the right to effective assistance of counsel during the plea bargaining process, and "[i]f a plea bargain is offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 162–68 (2012). In

---

[3] Because a petitioner "must satisfy *both* prongs [of *Strickland*], the inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc).

12

the plea bargaining context, the Sixth Circuit has held that "a criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available" and that "[i]n a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003); *see also United States v. Laird*, 591 F. App'x 332, 338 (6th Cir. 2014) (explaining that counsel who gives "materially inaccurate sentencing information or advice to [a] defendant" during plea negotiations performs deficiently (citation omitted)); *Pough*, 442 F.3d at 966 ("A defendant challenging his attorney's conduct during plea bargaining . . . must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence."); *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) (explaining that the failure of defense counsel to "provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance").

The Court finds that Petitioner has not meet his burden to show that counsel's performance was deficient. The record does not show a complete failure by counsel to review the Guidelines with Petitioner. To the contrary, Attorney Varner testified that he substantively reviewed the Guidelines with Petitioner, as it was his practice to do so with all his clients.

Petitioner asserts that he did not know about the Guidelines [Doc. 3], but the Court credits Attorney Varner's testimony that he discussed the Guidelines with Petitioner. Attorney Varner testified that he has practiced in the field of criminal defense almost exclusively over his forty (40) years of practice. He has averaged about five (5) federal criminal cases per year, and he was an original member of the CJA Panel at the time of its inception in the early 1990s. He also testified

that based upon his practice, he is about "[a]s familiar as anybody can be" with the Federal Sentencing Guidelines [Tr. 8]. Attorney Varner stated it his normal practice to always discuss the Guidelines with his clients. He typically performs an initial analysis of the Government's proof, examines it in relation to the Guidelines, and then explains to his clients what they will be facing or what they are potentially facing in that regard unless there are additional adjustments that could be made either up or down. The Court finds Attorney Varner's description of his practice habits and his experience with criminal defense bolsters his testimony. *See Napper v. United States*, No. 1:16-cv-01023, 2021 WL 4811631, at *9 (W.D. Tenn. Oct. 14, 2021) (crediting testimony of attorney based upon experience before the court). The Court also credits Attorney Varner's testimony that he did not advise Petitioner that the highest sentence he could receive would be twenty-one years, which was only three years above the plea deal he would try to obtain, because it was not his practice to make such statements given the nature of sentencing and his testimony that he would have advised Petitioner to go to trial if there were only three years' difference between pleading guilty and going to trial.

Attorney Varner stated he had "several discussions about the possible ranges of punishment" with Petitioner [Tr. 14]. Despite being unable to recall if he had discussed a sentencing enhancement based on maintaining a drug house, which Attorney Varner testified was not commonly assessed prior to his case with Petitioner, Attorney Varner stated that he still told Petitioner he would likely not get a three-level acceptance reduction and that he would likely be facing a sentencing range of 210 to 262 plus 60 months under the Guidelines if he proceeded to trial. Throughout their discussions, Attorney Varner mentioned, among other things, the possibility of a plea agreement and what the Guidelines range could be with or without acceptance of responsibility. His estimate was based on various factors: Attorney Varner's experience in

14

criminal defense and with particular sentencing judges, the sentencing judge's discretion in applying the Guideline range, the quantity and quality of drugs at issue in this case and the firearms charge, the likelihood Petitioner would be placed in Criminal History Category II, and the "rent on the Courtroom," among other things.  Attorney Varner further testified that he clarified to Petitioner that certain facts and issues may arise throughout the proceedings that could impact the estimate.  Attorney Varner testified multiple times that he had repeatedly stressed to Petitioner that his estimate was by no means perfect or a guarantee of the maximum sentencing exposure.  Thus, it appears Attorney Varner reviewed the Guidelines with Petitioner and provided a good faith estimate of a likely sentence, specifically providing insight into how the Guidelines could be affected by the factual and legal circumstances surrounding Petitioner's case.

The undersigned has also considered Petitioner's argument that language barriers may have limited his ability to understand anything that was conveyed to him concerning the Sentencing Guidelines.  While Attorney Varner affirmatively testified that Petitioner had "limited English capability[,]" he also stated that he "always had an interpreter with" him when he visited Petitioner in jail [Tr. 25].  And Attorney Varner explained that he had the interpreter read all documents to Petitioner.  At the evidentiary hearing, the Government also argued that Petitioner had been living in the United States for roughly ten to fifteen years, and it did not seem Petitioner's English was as bad as he claims.  The Court finds that Attorney Varner's testimony that he utilized an interpreter for all his communications with Petitioner alleviated the majority of the language barrier concerns, and thus, the Court finds Petitioner's argument unavailing.

While Attorney Varner may not have advised Petitioner of an enhancement for maintaining a drug house, Attorney Varner did discuss the Guidelines with Petitioner and ultimately estimated Petitioner's maximum sentencing exposure if he was to be convicted at trial would add up to 322

15

months, which is the exact sentence Petitioner received. *See United States v. Myers*, No. 5:16-CR-05, 2020 WL 8920849, at *5 (E.D. Ky. May 6, 2020) (finding counsel's performance was not deficient where "the record before [the] court does not reflect a complete failure by counsel to review the sentencing guidelines with the [petitioner]"). The Court therefore finds that Attorney Varner did not give "materially inaccurate information or advice" to Petitioner during plea negotiations, *Laird*, 591 F. App'x at 338, nor "failed to make a good faith estimate of a likely sentence," *Pough*, 442 F.3d at 966. In other words, counsel's performance was not deficient.

### 2. Whether Petitioner Was Prejudiced by Any Deficient Performance

Assuming, however, that counsel's performance was deficient, the Court further finds that any deficiency did not prejudice Petitioner. "Where, as here, a claim of ineffective assistance arises from the plea bargaining stage of criminal proceedings, the second part of the *Strickland* analysis, i.e., the 'prejudice' prong, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Sawaf v. United States*, 570 F. App'x 544, 547 (6th Cir. 2014) (citations omitted). "Once the defendant has satisfied the first prong of *Strickland* by establishing that counsel's performance was constitutionally defective, the threshold showing of prejudice required to satisfy the second prong is comparatively low—in such cases, the prejudice prong is satisfied if there is a "reasonable probability" that the defendant would have accepted the Government's plea offer, but-for counsel's ineffective assistance or inadequate advice." *Id.* (citations omitted). If, however, "counsel failed to provide the defendant with an estimated range of the penalties that could result from a trial conviction, the prejudice prong is presumptively satisfied if the difference between the length of the sentence proposed in the Government's plea offer and the sentence imposed after a trial conviction was substantial." *Id.* (citations omitted). "When this presumption applies, the defendant is not required to submit

16

additional objective evidence to 'support his own assertion that he would have accepted the offer' if provided with the benefit of effective assistance." *Id.* (citation omitted).

The presumption does not seem to apply here. First, Attorney Varner did not fail to provide an estimated range of the penalties that could result from a trial conviction, and the high-end of the estimate he provided was the sentence imposed upon Petitioner at sentencing following a trial conviction. Second, it is not clear that the Government ever made a formal plea offer in this case, and any offer made did not guarantee any particular sentence [*See* Doc. 9 p. 13 ("At one point, the [government] attorney drafted a possible plea agreement for [Petitioner's] consideration, but it did not guarantee any particular sentence . . . [and] plea negotiations failed because [Petitioner] elected to go to trial . . . .")].

But even if the presumption were to apply, the Court finds there is evidence to rebut it. *See United States v. Baltimore*, No. No. 3:07-CR-173, 2020 WL 2028255, at *7–8 (S.D. Ohio Apr. 28, 2020) (examining whether the United States rebutted the presumption after finding that it applies). There is no evidence here that Petitioner would have accepted a plea offer of eighteen years. Petitioner's affidavit does not state that he would have accepted a plea deal, only that he went to trial because he thought the most he could get was twenty-one years' imprisonment [Doc. 3].

There is evidence that Petitioner never appeared to be interested, or expressed an interest, in pursuing plea negotiations. Attorney Varner testified that he could not recall making a statement that Petitioner could only get twenty-one years, and he did not believe that he did, and the Court finds this testimony credible. Attorney Varner stated it would not be typical for him to ever make such a statement to one of his clients because of how many variables exist in the application of the Sentencing Guidelines. Attorney Varner also affirmatively testified that he did not get the impression that Petitioner had ever been interested in a plea agreement during his many discussions

17

with him. Attorney Varner could not recall exactly what Petitioner said regarding his interest in a plea agreement, but he said "it was along the lines of that if someone said he [Petitioner] was involved, they'd have to be lying" [Tr. 16–17]. And Petitioner did not change his mind even after Attorney Varner informed him he would likely get a reduction if he accepted responsibility and pleaded guilty and after Attorney Varner articulated the circumstances surrounding the strength of the Government's case. Attorney Varner stated he told Petitioner he would likely have, at best, a fifty-fifty chance at trial but that it was more likely he had a seventy-five percent chance of being convicted, if not more. Despite knowing all of that, Petitioner decided to go to trial. The Court finds the evidence suggests Petitioner likely would not have been interested in pursuing a plea offer of eighteen years.

    **B.**     **CERTIFICATE OF APPEALABILITY**

The district judge has directed the undersigned to include a recommendation as to whether to issue a certificate of appealability on the final issue remaining in the § 2255 motion, which will be necessary for Petitioner to appeal the Court's ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not find that dismissal of Petitioner's claim for ineffective assistance of counsel is debatable or wrong, as Petitioner has not made a substantial showing of the denial of a constitutional right. The Court therefore **RECOMMENDS** no certificate of appealability be issued to Petitioner.

## V. CONCLUSION

For the reasons expressed herein, the Court **RECOMMENDS**[4] that the remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 1**] be **DENIED** and that no certificate of appealability be issued.

Respectfully submitted,

*Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).